# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2008 FEB 20 A 10: 58

CLERK _[signature]_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ANDREW J. VAUGHN, Individually   *
and as Personal Representative   *
of the Estate of BETTY A.   *
VAUGHN, Deceased,   *
          *
       Plaintiff,   *      CV 106-170
          *
       vs.   *
          *
UNITED STATES OF AMERICA,   *
          *
       Defendant.   *

## O R D E R

Before the Court is Defendant's motion for partial
summary judgment on Plaintiff Andrew J. Vaughn's wrongful
death claim. Plaintiff opposes the motion. Upon
consideration of the parties' briefs and the relevant law, the
motion is **DENIED**.

## I. BACKGROUND

The underlying complaint in this case, brought pursuant
to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2671 *et
seq.*, and 28 U.S.C. § 1346(b), concerns the allegedly
negligent medical care Plaintiff's wife, Betty A. Vaughn,
received while a patient at the Dwight D. Eisenhower Medical

DHB (34)                            ccc: _[handwritten]_

Center ("Eisenhower") at Fort Gordon, Georgia. (Compl. ¶¶ 9-15.) For purposes of the instant motion, the parties do not dispute that Dr. Anthony M. Foley and Dr. Eric D. Adams negligently performed laparoscopic surgery on Mrs. Vaughn on February 11, 2002, or that such negligence caused numerous significant problems for Mrs. Vaughn thereafter. Rather, the dispute centers around Plaintiff's claim that Mrs. Vaughn died as a direct and proximate result of the alleged medical malpractice, i.e., the wrongful death claim.

Mrs. Vaughn was sixty-six years old when she was admitted to Eisenhower on February 10, 2002. Two years prior to her admission, she had undergone a radical cystectomy for transitional cell carcinoma of the bladder and creation of an Indiana pouch in place of her bladder. (Id. ¶¶ 6-7.) Over the two year period prior to her admission, Mrs. Vaughn developed a parastomal hernia that caused her difficulty with catheterization of the pouch. She was admitted to Eisenhower to have the hernia repaired laparoscopically. (Id. ¶ 7.) During the laparoscopic surgery of February 11, 2002, Mrs. Vaughn's bowel and the Indiana pouch were perforated. (Id. ¶ 9.) This perforation allegedly went undetected until Defendant performed an exploratory laparotomy on February 15, 2002. (Id. ¶¶ 9-10.)

According to Plaintiff's allegations, Mrs. Vaughn was required to undergo numerous major surgical procedures because of the medical negligence of Defendant. (Id. ¶ 13.) She suffered sepsis, became paralyzed and was placed on a ventilator. (Id. ¶ 14.) Mrs. Vaughn also suffered many other complications because of the alleged medical negligence of Defendant. (See Christiansen Decl. ¶ 6.) She remained hospitalized at Eisenhower until April 3, 2002. Upon discharge, she was transferred to HealthSouth Rehabilitation Hospital in Columbia, South Carolina, from which she was discharged on May 9, 2002. (Id.)

In June 2002, Dr. Neal P. Christiansen, an oncologist in Columbia, became Mrs. Vaughn's treating physician. He diagnosed Mrs. Vaughn with metastatic transitional cell carcinoma of the bladder. (Id. ¶ 7.) On June 21, 2002, Mrs. Vaughn became diaphoretic and was taken to the emergency room of Palmetto Richland Memorial Hospital in Columbia, South Carolina. (Id. ¶ 8.) Mrs. Vaughn had a marked deterioration in her mental status, and she was experiencing hypotension and respiratory failure upon arrival at the emergency room. She was hospitalized and placed on a ventilator. (Id.) On June 25, 2002, Mrs. Vaughn was removed from the ventilator pursuant to her prior wishes. She died on that day. (Id.)

Plaintiff filed an administrative claim with the United States Government in February 2004, in which he stated, <u>inter alia</u>, that because of Defendant's "failure to diagnose and treat cancer, Mrs. Vaughn died." (Def.'s Reply Br., Ex. G.) As part of his claim, Plaintiff signed Authorizations that allowed Defendant to obtain copies of Mrs. Vaughn's medical records. (Lumley Decl. ¶ 3.) Plaintiff's counsel asserts that Defendant obtained the records of Dr. Christiansen pursuant to the Authorizations during the administrative claim process. (<u>Id.</u> ¶¶ 4-5.) These records included a History and Physical Report that was prepared in connection with Mrs. Vaughn's hospitalization at Palmetto Richland Memorial Hospital where she had died. The Report is dated June 21, 2002, four days prior to her death. (<u>Id.</u>, Ex. E.) In the assessment portion of the Report, Dr. Christiansen noted the various "options" or causes of her admission symptoms on June 21, 2002. Of note, he stated: "Other options would be the development of significant sepsis. She had multiple infections and complications during her hospital stay from February until April, and I am concerned that this is likely to be recurrence of some of that." (<u>Id.</u>) During the administrative claim process, Defendant sent a letter to Plaintiff's counsel, dated February 9, 2004, which stated that the Government "consider[s] that you have abandoned" the

wrongful death claim. (Def.'s Reply Br., Ex. H.) Yet, there is nothing in the record that affirmatively showed Plaintiff abandoned the claim.

On November 15, 2006, Plaintiff filed the instant case. In addition to his allegations that the medical malpractice caused Mrs. Vaughn to suffer personal injuries, physical and mental pain and suffering, and substantial medical expenses (id. ¶¶ 16-17), Plaintiff alleges that Mrs. Vaughn died as a direct and proximate result of the medical malpractice (id. ¶ 18). Plaintiff seeks compensatory damages for the personal injury claims and damages for the "full value of the life of Betty A. Vaughn."[1] (Id., Prayer for Relief.) Defendant filed its Answer on January 18, 2007.

On February 20, 2007, Defendant served its Initial Disclosures on Plaintiff and listed Dr. Christiansen as a physician witness because he had "prepared a death summary." (Pl.'s Resp. to Mot. for Partial Summ. J., Ex. 1.) On Plaintiff's Initial Disclosures, served after Defendant's, he listed only Mrs. Vaughn's daughter "in addition to those

---

[1] The Court will not deem Plaintiff to have abandoned his wrongful death claim during the administrative claim process in the absence of confirmation on Plaintiff's behalf. Moreover, the fact that a wrongful death claim is unequivocally set forth in the complaint belies any assertion that Plaintiff abandoned the claim.

persons identified in Defendant's Initial Disclosures."
(Def.'s Reply Br., Ex. C.)

A Scheduling Order was entered in the case on February 23, 2007, which set the deadlines for Plaintiff to furnish any expert witness report by April 6, 2007, and for Defendant by May 6, 2007. Plaintiff timely filed the expert witness report of Dr. Brendan J. Carroll but did not file a report for Dr. Christiansen. Defendant was granted an extension of time to file its expert report, which moved the close of discovery to July 7, 2007. Defendant then timely filed its expert witness report of Dr. Bruce V. MacFadyen.

On July 2, 2007, days before the close of discovery, Defendant served its First Interrogatories, in which it asked Plaintiff to identify "each and every person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence, and all persons retained or specially employed to provide expert testimony." It also asked for "each and every physician, surgeon, nurse, health care provider, or other practitioner of the healing arts who has expressed an opinion either orally or in writing, as to the subject matter of this litigation . . . ." Plaintiff never responded to these interrogatories; Defendant never filed a motion to compel the responses.

On July 30, 2007, the parties filed a joint motion to extend the discovery period to complete depositions, including the deposition of Defendant's expert witness, Dr. MacFadyen. At that time, Defendant had already deposed Plaintiff's expert witness, Dr. Carroll, and Plaintiff had deposed two treating physicians.

At his deposition on June 22, 2007, Dr. Carroll was asked whether he was offering any opinion with respect to Plaintiff's wrongful death claim. Dr. Carroll responded: "No. I'm not really familiar with that aspect of [Mrs. Vaughn's] disease process." (Def.'s Mot. for Partial Summ. J., Ex. A at 22.) Based upon this testimony, Defendant moved for summary judgment on the wrongful death claim, contending that Plaintiff has not identified any expert witness to support the allegation that the alleged medical negligence proximately caused Mrs. Vaughn's death.

The motion for partial summary judgment was filed on July 31, 2007, the day after the parties moved to extend discovery. Meanwhile, Plaintiff sought an extension of time within which to file a response to the motion for partial summary judgment, stating that he wished to complete discovery first. Discovery in the case closed on September 7, 2007. On September 17, 2007, Plaintiff timely filed his response and the affidavit of Dr. Christiansen, Mrs. Vaughn's treating physician, wherein he

7

opines that "the multiple significant problems" experienced by Mrs. Vaughn as a result of the medical negligence "contributed significantly to [her] death." (Christiansen Aff. ¶ 9.) Plaintiff also filed a "Disclosure of Expert Testimony" on that same day. There is no dispute that this is the first time Plaintiff disclosed his intent to use Dr. Christiansen as an expert witness.

## II. STANDARD OF REVIEW

The Clerk has given Plaintiff notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. no. 17.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

While this case is before the Court on a motion for partial summary judgment, however, the central issue brought to light through the summary judgment process is whether Dr. Christiansen may be used as an expert witness in the case. The viability of Plaintiff's wrongful death claim rests upon his ability to prove Mrs. Vaughn's death was the proximate result of medical negligence. Plaintiff may only do this with

expert testimony.[2] Thus, the exclusion, or unavailability, of Dr. Christiansen's testimony would entitle Defendant to summary judgment since Plaintiff will be unable to prove an essential element of his wrongful death claim - proximate cause. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (holding that summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an essential element to the case); Gonzalez v. Lee County Housing Auth., 161 F.3d 1290, 1294 (11th Cir. 1998) ("If the non-moving party fails to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' then the court must enter summary judgment for the moving party." (quoted source omitted)).

---

[2] Under Georgia law, the medical malpractice plaintiff must overcome the presumption that a physician performs his healing art in an ordinarily skillful manner. McClure v. Clayton County Hosp. Auth., 176 Ga. App. 414, 416 (1985). The plaintiff must show "(1) the duty inherent in the health care provider-patient relationship; (2) breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure is the proximate cause of the injury sustained." Knight v. West Paces Ferry Hosp., 262 Ga. App. 220, 221 (2003). Causation issues in medical malpractice cases, here the proximate cause of death, are beyond the ken of laypersons, and therefore may only be resolved by expert medical testimony that shows there was a reasonable probability that the medical negligence caused the death. See Zwiren v. Thompson, 276 Ga. 498, 500-01 (2003); Pilzer v. Jones, 242 Ga. App. 198, 201 (2000).

### III. EXCLUSION OF DR. CHRISTIANSEN'S TESTIMONY

Rule 26(a)(2) of the Federal Rules of Civil Procedure requires that parties disclose the identity of expert witnesses and provide a written report that specifically describes the nature of the expert witness' opinion, supporting evidence, compensation, and qualifications. Such disclosures must be made within 90 days before trial "[i]n the absence of other directions from the court . . . ." Rule 26(a)(2)(C). In the instant case, the Court ordered that Plaintiff file his expert witness reports by April 6, 2007. (Doc. No. 7.)

Plaintiff timely filed the expert witness report of Dr. Carroll but not of Dr. Christiansen. Plaintiff contends, however, that he was not required to do so because Dr. Christiansen was not "retained or specially employed to provide expert testimony in the case." See Fed. R. Civ. P. 26(a)(2)(B). Rather, Plaintiff argues that Dr. Christiansen is a treating physician who will testify about his care of Mrs. Vaughn and offer an opinion as to the cause of death based upon his treatment of her.

Rule 26(a)(2) distinguishes between retained and non-retained experts. As demonstrated by the Plaintiff's counsel's affidavit, Dr. Christiansen is not an expert witness retained or specially employed to provide expert testimony.

(Lumley Aff. ¶ 11.)  Thus, while Dr. Christiansen may be an expert witness who must be disclosed under Rule 26(a)(2), Plaintiff was not required to provide an expert report for him.  See Fed. R. Civ. P. 26 Advisory Committee Notes, 1993 Amendments, subdivision (a), para. (2) ("The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case . . . . A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."); accord Bengston v. Bazemore, 2007 WL 3307204 (M.D. Ala. Nov. 6, 2007) (refusing to strike the affidavit of a treating physician who opined about the cause of the plaintiff's injury but did not provide an expert report); Pellon v. Business Representation Internat'l, Inc., 2007 WL 2994077 (S.D. Fla. Oct. 11, 2007); McKee v. USAA Ins. Agency, 2006 WL 3422238 (N.D. Fla. Nov. 28, 2006).[3]  Accordingly, Plaintiff did not violate the terms of

---

[3] The Court is well aware of the body of case law which concludes that when a treating physician goes beyond the observations and opinions obtained by treating the individual and expresses opinions acquired or developed in anticipation for trial, the treating physician may need to provide an expert report.  See, e.g., Bell v. Columbia St. Mary's Hosp. Milwaukee, Inc., 2008 WL 163671 (E.D. Wis. Jan. 16, 2008); Trejo v. Franklin, 2007 WL 2221433 (D. Colo. July 30, 2007); Baratta v. City of Largo, 2003 WL 25686843 (M.D. Fla. 2003); Wreath v. United States, 161 F.R.D. 448 (D. Kan. 1995); Salas v. United States, 165 F.R.D. 31 (W.D.N.Y. 1995).  However, in this case, Dr. Christiansen prepared a case history four days prior to Mrs. Vaughn's death in which he opined, based upon

11

the Scheduling Order or Rule 26(a)(2)(B) in failing to file an expert report for Dr. Christiansen.

Having determined that Plaintiff need only disclose Dr. Christensen as a non-retained expert under Rule 26(a)(2)(A), he has complied with the letter of the rules by filing his disclosure within 90 days prior to trial since no trial date has been set in the case. This does not necessarily mean that Plaintiff has complied with the spirit of the rules.

The Court is troubled by the late disclosure in that Plaintiff sought an extension of time within which to file a response to the summary judgment motion, thereby waiting until discovery closed to disclose an expert witness. The Court is equally confounded by Plaintiff's failure to respond to interrogatories that would have required his disclosure of Dr. Christiansen as an expert witness.

Plaintiff's counsel avers that he did not have Dr. Christiansen's so-called "Death Summary" - the Report of June 21, 2002 - until after May 9, 2007, when Defendant served a copy of the medical records from Palmetto Richland Memorial

---

his treatment of Mrs. Vaughn and his review of her records at that time, that the cause of her fatal condition may be based upon the allegedly negligent surgery and aftercare she received by Defendant. Accordingly, Dr. Christiansen has not yet stepped into the shoes of an expert required to provide an expert witness report. Nevertheless, this Court will monitor the substance of Dr. Christiansen's testimony to ensure that he stays within the scope of his examination and treatment of Mrs. Vaughn in expressing opinions regarding causation.

Hospital. (Lumley Aff. ¶ 4.) He further avers that he does not remember reading the records until he was preparing for the depositions of Drs. Carroll, Adams and Foley in June and July of 2007, and that he tried to reach Dr. Christiansen around August 16, 2007, when his caseload permitted. (Id. ¶¶ 7-10.) Ultimately, counsel could not meet with Dr. Christiansen until September 11, 2007. It was at this meeting that Plaintiff confirmed that Dr. Christiansen was of the opinion that the problems that Mrs. Vaughn experienced as a result of the surgery contributed significantly to her death. (Id. ¶ 9.) Plaintiff's counsel then notified Defendant on September 17, 2007. In sum, Plaintiff's counsel asserts that the timing of his disclosure of Dr. Christiansen "was not made out of any desire to gain an advantage over the Defendant . . . [or] to 'sandbag' the Defendant." (Id. ¶ 10.)

Defendant urges the exclusion of Dr. Christiansen's expert testimony under Rule 37(c)(1), which provides: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence . . . any witness or information not so disclosed." The rule further provides: "In addition to or in lieu of this sanction, the court . . . may impose other appropriate

13

sanctions." Thus, whether to exclude testimony of an undisclosed, or in this case, an untimely disclosed, expert rests within the Court's discretion. See Cooper v. Southern Co., 390 F.3d 695, 728 (11th Cir. 2004); Prieto v. Malgor, 361 F.3d 1313, 1318 (11th Cir. 2004).

In the instant case, I have considered the competing interests of the parties. The non-disclosure of Dr. Christiansen as an expert witness may have come about honestly - based upon delays encountered by Plaintiff's counsel in the regular course of litigation or even based upon poor management and preparation of the case. The Court concludes, however, that the non-disclosure falls short of willfulness or bad faith on the part of Plaintiff's counsel. Additionally, the Court notes that Defendant was not wholly unaware of Dr. Christiansen or the Report of June 21, 2002. Most importantly, while it is true that Defendant will suffer some prejudice should Plaintiff be entitled to use Dr. Christiansen as an expert witness, it is not prejudice without a cure. For instance, Defendant incurred the expense of filing and litigating the instant motion for summary judgment in the case based upon the non-disclosure of an expert on the proximate cause of death. Defendant also lost the opportunity to depose Dr. Christiansen about his opinion because discovery has closed. The Court, however, can fashion a remedy to alleviate

any harm caused by the untimely disclosure. In short, I will not impose the harsh sanction of exclusion, but rather, in lieu thereof, I will impose other more appropriate sanctions.

## IV. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that Defendant's motion for partial summary judgment is hereby **DENIED.** Defendant shall have ten (10) days from the date of this Order within which to file affidavits or other evidence detailing the amount of attorney's fees incurred as a result of filing and litigating the motion for partial summary judgment. Upon consideration of this evidence, the Court will impose appropriate monetary sanctions against Plaintiff.

**IT IS FURTHER ORDERED** that discovery in the case shall be opened for a period of thirty (30) days from the date of this Order for the sole purpose of allowing Defendant to interview or to take the deposition of Dr. Christiansen should it choose to do so. Thereafter, Defendant may file an appropriate motion seeking whatever discovery it may require to rebut the evidence or opinions obtained therein.

**ORDER ENTERED** at Augusta, Georgia this _19th_ day of February, 2008.

UNITED STATES DISTRICT JUDGE

15